## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JOHNITAL BELL, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                   **NO. 21-326-SDD-SDJ**

**DOW CHEMICAL COMPANAY, ET AL.**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

    **ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

    Signed in Baton Rouge, Louisiana, on March 11, 2022.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHNITAL BELL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-326-SDD-SDJ** |
| **DOW CHEMICAL COMPANAY, ET AL.** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' *Motion to Remand*. (R. Doc. 19). The motion is opposed. (R. Docs. 38, 39). Plaintiffs filed a Reply. (R. Doc. 45). Defendants, Dow Chemical Company and INEOS Americas, LLC, filed a Sur-reply. (R. Doc. 45).

**I.  Background**

On or about April 26, 2021, Johnital Bell, individually and on behalf of her deceased husband, James Bell, Darlene Billings, Glynda Bonvillain, Marie Chauvin, April Favaron, Cynthia Forde, Elizabeth Gauthier, Terri Gilbert, Bonnie Haydel, Mary Jones, Cheryl Huffman, Sandy Martinez, Patricia Richardson, Sharon Scott, Ronald Spradley, Darleen Taylor, Alma Watson, and David Whitehurst initiated this action in the 18th Judicial District Court for the Parish of Iberville, Louisiana. (R. Doc. 1-1). Plaintiffs allege that they contracted cancer due to living near one of two chemical plants operated by INEOS Oxide, a Division of INEOS Americas, LLC, and Dow Chemical Company (collectively, "Corporate Defendants") and being forced to breathe Ethylene Oxide ("EtO") produced at the plants. (R. Doc. 1-1. ¶¶ 1-9, 100-121).

Plaintiffs also sue 16 individuals currently or formerly employed by the Corporate Defendants: Karen Williams, Jennifer Smith, Robert Samson, Eduardo Do Val,[1] Michael Albano, Theo Webre, Kim Feltner, Sandy Holden, Dan Bucholtz, Donald Lyle, Lance Parker, Dan Jason,

---
[1] Eduardo Do Val is alleged to be a citizen of Texas.

Eric Robertson, Kevin McGovern,[2] Larry Locicero, and Ronald Lambotte ("Individual Defendants"). (R. Doc. 1-1 ¶¶ 32-47). Plaintiffs allege that each Individual Defendant was designated to the Louisiana Department of Environmental Quality ("LDEQ") as a "Responsible Official" (or "RO")[3] for the permits under which the facilities operated and emitted EtO from 2001 to 2020, were personally responsible for ensuring the Corporate Defendants' respective compliance with these permits, and knew or should have known that people living in the surrounding community were exposed to unsafe levels of EtO being emitted from the facilities. (R. Doc. 1-1 ¶¶ 73-95). Plaintiffs allege counts of negligence and civil battery against the Individual Defendants. (R. Doc. 1-1 ¶¶ 141-270; 290-333).

On June 2, 2021, Dow removed the action under the general removal statute, 28 U.S.C. § 1441, under which it asserts this Court has original jurisdiction under the diversity jurisdiction statute, 28 U.S.C. § 1332 (R. Doc. 1). Dow asserts that there is complete diversity because Plaintiffs are citizens of Louisiana, Dow is a citizen of Delaware and Michigan, INEOS is a citizen of Texas and Delaware, and the citizenship of the Individual Defendants should be disregarded because they were improperly joined. (R. Doc. 1 at 7). Dow contends that the Individual Defendants are improperly joined because liability cannot be established against them as a matter of law. Specifically, Dow contends the Individual Defendants did not owe a personal duty of care to the Plaintiffs in their capacities as Responsible Officials related to permitted facility emissions under the Clean Air Act ("CAA") or the implementing regulations. (R. Doc. 1 at 3-6). Dow further asserts that the amount-in-controversy requirement is facially apparent considering the injuries and damages alleged in the Petition. (R. Doc. 1 at 6). Dow states it obtained the timely written consent

---

[2] Kevin McGovern is alleged to be a citizen of Texas.
[3] Plaintiffs use the term "Permit Responsible Official" or ("PRO") in their Petition.

of all properly-joined and served Defendants—namely INEOS—for the purposes of removal under the general removal statute. (R. Doc. 1 at 4, R. Doc. 1-2).

On June 29, 2021, Plaintiffs filed the instant *Motion for Remand,* which asserts that the Court lacks subject matter jurisdiction because the Individual Defendants are properly joined (R. Doc. 19).

**II.     Arguments of the Parties**

In support of remand, Plaintiffs argue that Dow cannot meet its burden to show there is "no possibility of recovery" by Plaintiffs against the Individual Defendants under Louisiana law for the purpose of establishing that they are improperly joined defendants. (R. Doc. 19-1 at 7-18). In opposition, Dow and INEOS argue that Plaintiffs have failed to state a claim against the Individual Defendants under *Canter v. Koering Co.,* 283 So.2d 716 (La. 1973). Specifically, Dow and INEOS contend that the Individual Defendants owed no personal duty to the Plaintiffs by virtue of their administrative role as designated Responsible Officials pursuant to Louisiana's administration of the Clean Air Act (R. Doc. 38 at 14-23, R. Doc. 39, p. 6-16). Furthermore, Dow and INEOS argue that Plaintiffs fail to state a battery claim because the allegations are conclusory and lack the requisite intent (R. Doc. 38 at 11; R. Doc. 39 at 16-19). Defendants submit declarations by each of the respective Individual Defendants in support of a finding of improper joinder.[4]

In reply, Plaintiffs again argue that the Individual Defendants are not improperly joined because they were delegated duties related to EtO emissions, they were not required to have personal duties toward the Plaintiffs to establish liability under Louisiana law, and the declarations

---

[4] Dow submits the following declarations: Michael Albano's Declaration (R. Doc. 38-5); Dan Busholtz's Declaration (R. Doc. 38-6), Eduardo do Val's Declaration (R. Doc. 38-7), Sandy Holden's Declaration. (R. Doc. 38-9), Dan Jason's Declaration (38-10), Donald Lyle's Declaration (38-11), Lance Parker's Declaration (38-12), Robert Samson's Declaration (38-13), Jennifer Smith's Declaration (38-14), Theo Webre's Declaration (38-15), and Karen Williams' Declaration (38-16). INEOS submits the following declarations: Eric Robertson's Declaration (R. Doc. 39-1), Kevin McGovern's Declaration (R. Doc. 39-2), Larry Locicero's Declaration (R. Doc. 39-3), and Ronald Lambotte's Declaration (R. Doc. 39-4).

3

submitted do not demonstrate that there is no possibility of recovery. (R. Doc. 42 at 4-16). In sur-reply, Dow and INEOS reiterate their argument that designation as a Responsible Official is insufficient to establish liability under the requirements of *Canter v. Koering Co.* (R. Doc. 45).

### III.   Law and Analysis

#### A.   Legal Standards for Diversity Jurisdiction Based on Improper Joinder

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States," and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1).[5] Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed . . ."). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-

---

[5] There is no dispute that the amount in controversy requirement is satisfied. Accordingly, the Court will turn directly to the issue of whether the Individual Defendants were improperly joined as defendants.

4

diverse party in state court." *Travis*, 326 F.3d at 646-47. As the removing Defendants have not alleged actual fraud in Plaintiffs' pleading of jurisdictional facts, the Court will only consider the latter test for improper joinder. In that situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573-74 (5th Cir. 2004).

Generally, a court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. However, where a plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether a non-diverse defendant has been improperly joined. *Id.* The summary inquiry is appropriate only to identify discrete and undisputed facts:

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id*. As examples of "discrete and undisputed facts" that could be identified through jurisdictional discovery, the Fifth Circuit offered: "the in-state doctor defendant did not treat the plaintiff patient,

5

the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. at 574 n.12. Although the court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

"[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). If a court determines that the non-diverse party has been improperly joined under a Rule 12(b)(6)-type analysis, that party must be dismissed without prejudice. *Id*. at 209. This dismissal is based on lack of subject matter jurisdiction and does not operate as an adjudication on the merits. *Id*. at 210. When applying the improper joinder test, a federal court reads the original State court pleading through the lens of the federal pleading standards. *Id.* at 203.

When conducting a Rule 12(b)(6)-type analysis, the Court must determine whether the plaintiff has plead "enough facts to state a claim to relief that is plausible on its face." *Int'l Energy Ventures*, 818 F.3d at 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. The Court may take judicial notice of public records while conducting this 12(b)(6)-type analysis. *See Viking Constr. Grp., LLC et al. v. Satterfield &*

6

*Pontikes Constr. Grp., et al.*, No 17-12838, 2018 WL 398751, at *4 n.18 (E.D. La. Jan. 12, 2018); *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017).

### B. Plaintiffs' Negligence Claims

Having considered the record, the Court will pierce the pleadings to consider the declarations signed by the Individual Defendants that have been submitted in opposition to remand for the purpose of addressing Plaintiffs' negligence claims. *See Lamar Ellis, et al. v. Evonik Corp, et al.*, No. 21-1089, 2021 WL 4862146, at *3 (E.D. La. Oct. 19, 2021) (considering declarations submitted by individual defendants, all general managers of plants designated as Responsible Officials, where the plaintiffs alleged they contracted cancer as a result of exposure to EtO emissions); *Terri Cambre, et al. v. Union Carbide Corporation, et al.*, No. 21-1-67, ECF No. 38, at *8 (E. D. La. Oct. 18, 2021) (same). The Individual Defendants' declarations attest to the employees' job responsibilities, as well as other "discrete facts that . . . determine the propriety of joinder." *Smallwood*, 385 F.3d at 573; *see also Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (affirming, in a toxic-tort case, the trial court's consideration of non-pleading evidence because "the defendants may submit affidavits and deposition transcripts," and plaintiffs may, "in support of their motion to remand, . . . submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint") (quoting *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)); *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("When determining fraudulent joinder, the district court may look to the facts established by summary judgment evidence as well as the controlling state law. Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand.").

Plaintiffs contend that the Individual Defendants were properly joined because there is a possibility that they could be held liable for Plaintiffs' injuries under state law. Louisiana law sets

7

forth the circumstances under which an employee can be held individually liable for injuries to third persons. In *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), the Louisiana Supreme Court held that an employee may be personally liable to third parties only if four distinct criteria are satisfied:

> 1. The principal or employer owes a duty of care to the third person . . ., breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant . . . has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. [P]ersonal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically caused the plaintiff's damages.

*Id.* at 721; *see also Anderson v. Ga. Gulf Lake Charles, LLC*, 342 F. App'x 911, 916 (5th Cir. 2009) ("*Canter*'s four-part test is used to determine whether an employee is individually liable to third persons, even if they are not co-employees.") (quoting *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 386 (5th Cir. 2009)). Courts find personal liability under *Canter* only in "limited circumstances." *Banks v. Wal-Mart, Inc.*, No. 18-749, 2018 WL 4001289, at *3 (W.D. La. Aug. 6, 2018).

Here, Plaintiffs seek to impose *Canter* liability for negligence on the Individual Defendants because each was designated as a Responsible Official at some point during the years preceding the commencement of this action. Plaintiffs allege that, as Responsible Officials, the Individual Defendants "certified that information provided to LDEQ regarding EtO emissions from the respective facilities were true, accurate, and complete." (R. Doc. 1-1, ¶ 74). Plaintiffs do not allege

8

that any of the employees submitted false or misleading information to LDEQ. Instead, Plaintiffs allege that "[i]n connection with being a [RO], each of the [Individual Defendants] owed a *personal duty* to the community surrounding the facilities, including Plaintiffs, to not emit harmful emissions of EtO from the respective facilities that could injury members of the community, including Plaintiffs." (R. Doc. 1-1, ¶ 76). Plaintiffs characterize the personal duty, and breach of that duty, as follows:

> On information and belief, each of the [Individual] Defendants had the authority to shut down emissions of EtO from the respective facilities and implement changes to emissions controls and systems necessary to reduce dangerous emissions of EtO, but none of the [Individual] Defendants exercised their authority to take steps to protect the community surrounding the facilities by reducing emission levels or shutting the facilities down until emission levels could be lowered to safe levels.

(R. Doc. 1-1, ¶ 79). Plaintiffs allege that they were general (or plant) managers of their respective facilities for a period of time, "had direct responsibility for EtO emissions and was personally responsible for ensuring [the respective Corporate Defendant's] compliance with environmental regulations and laws and the permits issued by the LDEQ to the [respective] facility," and "knew or should have known that people living in the surrounding community were and continue to be exposed to unsafe levels of EtO being emitted from the [respective] facility and that those people faced and still face an increased risk of developing cancer as a result of the emissions of EtO from the [respective] facility." (R. Doc. 1-1, ¶¶ 80-95).

Having considered Plaintiffs' allegations and the summary judgment type evidence in the record, the Court finds that Plaintiffs have no possibility of recovery for negligence from the Individual Defendants under *Canter*. Even assuming that the first *Canter* factor is satisfied – that the Corporate Defendants owed a duty not to harm the community surrounding their respective facilities – Plaintiff cannot establish the remaining factors.

Plaintiffs cannot establish the second *Canter* factor – whether the principal delegates a duty of care to the defendant – based on the status of the Individual Defendants as Responsible Officials.

9

Plaintiffs do not make any factual allegations with respect to the actual duties of the Individual Defendants as managers, much less any factual allegations suggesting that these individuals were tasked with independently ascertaining what levels of emissions were safe. Instead, Plaintiffs contend that, as Responsible Officials, the Individual Defendants were required by state regulation to bear responsibility for the EtO emissions of the respective facilities.

In support of their position, Plaintiffs argue that the Louisiana Administrative Code's definition of Responsible Official "delegate[s] direct authority and duties relating to [the Responsible Official's] plant's EtO operations and emissions." (R. Doc. 19-1 at 17). The Definition of "Responsible Official" found in Louisiana's Administrative Code:

> (1) a president, secretary, treasurer, or vice-president of the corporation in charge of a principal business function,
>
> (2) any other person who performs similar policy or decision-making functions for the corporation, or
>
> (3) a duly authorized representative of such person if the representative is responsible for the overall operation of one or more manufacturing, production, or operating facilities applying for or subject to a permit.

La. Admin. Code tit. 33, § 502(A).

Contrary to Plaintiffs' assertions, however, the regulatory definition "does not require ROs to have the authority or duty to determine what [EtO] emissions levels are safe, to require changes in emissions levels, or to shut down the facility, much less to evaluate the safety of emissions levels in the surrounding community." *Ellis*, 2021 WL 4862146, at *3. At most, Responsible Officials must submit certain administrative "certifications" to the appropriate regulator of the truth, accuracy, and completeness of all applications, recordkeeping, monitoring, and reporting requirements associated with a facility's permitted operations and emissions limitations. *See* 42 U.S.C. § 7661b (requiring the "responsible official" to certify the accuracy of information submitted in compliance plan and permit application); 42 U.S.C. § 7661c (requiring the

"responsible corporate official" to certify the accuracy of any report required to be submitted by a permit); La. Admin. Code tit. 33, § 517(B)(3) (requiring that a "Responsible Official" certify permit applications). Consistent with the foregoing, the Individual Defendants represent in their sworn declarations that the duty associated with being a Responsible Official is to assure and certify the truth, accuracy, and completeness of the facility's regulatory submissions required under state and federal law.[6] Furthermore, consistent with the applicable statutes and regulations, the "temporary nature of the role further suggests that the RO designation did not endow the employee defendants with the power or responsibility to reduce or control the facility's EtO emission levels." *Ellis*, 2021 WL 4862146, at *4. In other words, the Corporate Defendants did not designate to the Individual Defendants any duty of care as Responsible Officials with respect to the community at large.

Plaintiffs nevertheless argue that by alleging that each of the Individual Defendants is a Responsible Official, "by definition each individual was delegated direct authority and duties relating to their plant's EtO operations and emissions." (R. Doc. 19 at 16). As discussed above, however, the regulatory definition of "Responsible Official" provides that the designated individual has a duty to certify certain information to the LDEQ, not that any delegation of general duties held by the designated individual's employer to the public are made.

Finally, Plaintiffs cannot satisfy the third and fourth *Canter* factors, namely that the Individual Defendants breached a duty through personal fault and that the duty fell outside of the "general administrative responsibility[ies]" of their employment. *Canter*, 283 So. 2d at 721.

---

[6] Michael Albano's Declaration (R. Doc. 38-5), Dan Busholtz's Declaration (R. Doc. 38-6), Eduardo do Val's Declaration (R. Doc. 38-7), Sandy Holden's Declaration, Kim Feltner's Declaration (R. Doc. 38-8), Sandy Holden's Declaration (R. Doc. 38-9), Dan Jason's Declaration (38-10), Donald Lyle's Declaration (38-11), Lance Parker's Declaration (38-12), Robert Samson's Declaration (38-13), Jennifer Smith's Declaration (38-14), Theo Webre's Declaration (38-15), and Karen Williams' Declaration (38-16), Eric Robertson's Declaration (R. Doc. 39-1), Kevin McGovern's Declaration (R. Doc. 39-2), Larry Locicero's Declaration (R. Doc. 39-3), and Ronald Lambotte's Declaration (R. Doc. 39-4).

11

Plaintiffs assert that the Individual Defendants failed to act despite having had "actual knowledge of the potentially carcinogenic qualities of EtO . . . because their respective roles at the facilities required them to be aware of the health effects of EtO which were widely known to those in their industry to cause cancer…" (R. Doc. 1-1, ¶ 78). This speculative allegation of "industry" knowledge is insufficient to establish *Canter* liability. *See Ellis*, 2021 WL 4862146, at *6 ("In *Canter* cases, where actual knowledge of a hazard is alleged, courts require that the employee-defendant have actually known of a discrete, imminent risk, which ultimately leads to a plaintiff's injuries.") (*comparing Ford v. Elsbury*, 32 F.3d 931, 939 (5th Cir. 1994) (finding that *Canter* liability was possible as to a plant manager when employees testified that they had complained of a leaky reactor and an unsafe work area, that management had not acted, and that the manager said, "[s]ometimes you have to overlook safety to get the job done"), *Garrett v. AEP River Ops., LLC*, No. 15-5562, 2016 WL 945056, at *4 (E.D. La. Mar. 14, 2016) (finding that *Canter* liability was possible when the employee-defendant did not contest that he had been informed of the allegedly harmful conduct), *and Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E.D. La. 1992) (finding that an employee's alleged personal knowledge of a dangerous pipeline could give rise to *Canter* liability), *with Guillory*, 434 F.3d at 312 (finding no possibility of *Canter* liability for two chemical-plant safety managers because there was "no basis for concluding that either individual had any knowledge of whether any steps were taken" to prevent additional chemical releases after prior incidents at the facility), *and Gautreau v. Lowe's Home Ctr., Inc.*, No. 12-630, 2012 WL 7165280, at *4 (M.D. La. Dec. 19, 2012) (finding that plaintiff could not state a claim against a store manager because plaintiff alleged no facts indicating the manager "actively contributed to or had any personal knowledge of a harmful condition" in the display that caused plaintiff's injury)). Here, Plaintiffs do not allege that the Individual Defendants knew of any particular facts with respect to the health effects of EtO. The allegations of a collective "industry

12

knowledge" is too "general, remote, and conclusory to support a claim under *Canter*." *See Ellis*, 2021 WL 4862146, at *6.

Furthermore, as discussed above, the "Responsible Official" designations merely created the duty to verify and submit regulatory documents to LDEQ, the precise type of "general administrative responsibilit[ies]" for which "personal liability cannot be imposed" under the fourth *Canter* factor. *See Ellis*, 2021 WL 4862146, at *4 (denying motion to remand where the declarations of non-diverse plant managers in tort action involving alleged EtO emissions established that the designation of each individual defendant as a "Responsible Official" created general administrative duties for which there can be no *Canter* liability) (citing *Canter*, 283 So. 2d at 721; *Brady v. Wal-Mart Stores, Inc.*, 907 F. Supp. 958, 960 (M.D. La. 1995) (rejecting a plaintiff's attempt "impose liability on [the defendant] for breaches of his general administrative duties as store manager")); *but see Davis v. Omega Refining, LLC*, No. 15-518, 2015 WL 3650832 (E.D. La. June 11, 2015) (denying motion to dismiss plant manager in tort action related to operation of oil recycling plant where plant manager testified in deposition that "she was a liaison for the plant with the Louisiana Department of Environmental Quality" and plaintiffs argued "she knowingly allowed the emissions of noxious chemicals and odors into the surrounding communities" and was designated as a "Responsible Official" with the authority to sign forms submitted to the LDEQ).

In sum, the record does not support a finding that the Corporate Defendants delegated any duty of care to the public at large to the Individual Defendants, that the Individual Defendants owed any personal duties to Plaintiffs, and that the Individual Defendants breached those duties. This is not a case where the individual employee defendants could be found to have owed any personal duty to the plaintiffs, who were not employees of the Corporate Defendants and were not allegedly injured on the premises of the Corporate Defendants as invitees or otherwise. *See Ellis*,

13

2021 WL 4862146, at *4 ("The Court is aware of no *Canter* cases where a court found that an employee-defendant owed a plaintiff a personal duty when, as here, the plaintiff is not a co-employee, and plaintiff's alleged injuries took place off the employer's premises.") (*comparing Savoy v. Swift Energy Operating Co.*, No. 12-167, 2012 WL 2343169, at **5-6 (E.D. La. June 20, 2012) (finding that a wellhead owner owed a duty to a contractor working on his property), *Bryant v. Exxon Mobil Corp.*, No. 10-532, 2011 WL 3163147, at *5 (M.D. La. May 19, 2011), *report and recommendation adopted*, 2011 WL 3207817, at *1 (M.D. La. July 26, 2011) (finding that managers at a chemical facility owed an employee-plaintiff a personal duty to create a safe working environment), *and Caire v. Murphy* Oil, No. 13-4765, 2013 WL 5350615, at *3 (E.D. La. Sept. 13, 2013) (finding that "there exists an issue of fact as to whether the individual employee-defendants were delegated personal responsibility over the health and safety of invitees on their employer's premises"), *with Kemp v. CTL Distrib., Inc.*, 440 F. App'x 240, 246 (5th Cir. 2011) (finding that a truck-terminal manager owed no personal duty to a non-employee plaintiff who was injured in the truck terminal), and *Gulotta v. Dow Chem. Co.*, No. 05-370, 2006 WL 8433368, at *4-5 (M.D. La. Feb. 9, 2006) (finding that plant managers owed no personal duty to a plaintiff who allegedly developed cancer because of harmful emissions in the community near the plant)). In addition, the Louisiana Supreme Court has held that, "in order for personal liability to attach under *Canter*, '[the defendant] must have some personal contact with and responsibility towards the injured employee.'" *Kemp*, 440 F. App'x at 246 (quoting *Esco v. Smith*, 468 So. 2d 1169, 1175 (La. 1985)). Here, most of the Individual Defendants have each sworn that they do not personally know any of the Plaintiffs.[7]

---

[7] Michael Albano's Declaration (R. Doc. 38-5), Eduardo do Val's Declaration (R. Doc. 38-7), Dan Jason's Declaration (38-10), Donald Lyle's Declaration (38-11), Lance Parker's Declaration (38-12), Robert Samson's Declaration (38-13), Jennifer Smith's Declaration (38-14), Theo Webre's Declaration (38-15), Karen Williams' Declaration (38-16), Eric Robertson's Declaration (R. Doc. 39-1), Kevin McGovern's Declaration (R. Doc. 39-2), Larry Locicero's Declaration (R. Doc. 39-3), and Ronald Lambotte's Declaration (R. Doc. 39-4). Dan Busholtz's Declaration (R. Doc. 38-6), Kim Feltner's Declaration (R. Doc. 38-8), and Sandy Holden's Declaration (R. Doc. 38-9) do not include

14

Based on the foregoing, Plaintiffs cannot show that the Individual Defendants were delegated any duty of care to the public at large with respect to the release emissions of EtO from the Corporate Defendants' facilities or that the Individual Defendants breached any personal duties owed toward Plaintiffs. Accordingly, there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against any of the Individual Defendants under a theory of *Canter* liability for negligence. Therefore, the Individual Defendants were improperly joined with respect to Plaintiffs' negligence claims.

### D.     Battery Claims

The Court need not decide whether the protections provided by *Canter* extend to the alleged intentional torts in this action because Plaintiffs' allegations fail even if *Canter* does not apply. *See Ellis*, 2021 WL 4862146, at *7-9 (finding that *Canter* analysis does not apply to intentional tort of battery and nevertheless finding that the plaintiffs did not state a plausible claim for battery).

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). For the act to be intentional, the actor must either "(1) consciously desire the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) know that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Batiste v. Bayou Steel Corp.*, 45 So. 3d 167, 168 (La. 2010).

Here, Plaintiffs allege that each of the Individual Defendants "intended for the [respective] facility to release emissions of EtO," "knew that the intended emissions . . . would make contact with and be inhaled by the individuals living in close proximity to the [respective] facility, which

---

specific statements that they do not know the Plaintiffs. However, there are no allegations in the Petition that the Plaintiffs had any contact with these Individual Defendants of any sort, much less the type of contact that would give rise to *Canter* liability.

15

included Plaintiffs," "knew to a substantial certainty that inhalation of EtO would cause serious health risks and increased risks of cancer to those individuals living in close proximity to the facility who inhaled the chemical," and that Plaintiffs' inhalation of EtO was nonconsensual.(R. Doc. 1-1, ¶¶ 146-151, 157-162, 168-173, 179-184, 190-193, 190-204, 210-215, 221-226, 232-237, 243-248, 254-259, 265-270, 295-300, 306-311, 317-322, 328-333). Plaintiffs allege that none of the Individual Defendants "exercised their authority to take steps to protect the community surrounding the facilities by reducing emission levels or shutting the facilities down until emission levels could be lowered to safe levels" and "unquestionably knew that the EPA had concluded that EtO was a likely carcinogen, and that the facilities' respective omissions of EtO greatly exceeded levels that would be necessary to meet the EPA's recommended threshold for ambient air concentration." (R. Doc. 1-1. ¶¶ 78-79).

Plaintiffs do not allege that the Individual Defendants committed an affirmative "act" intended to cause any harmful contact with Plaintiffs or their spouses. *Caudle*, 512 So. 2d at 391. Instead, Plaintiffs allege that the Individual Defendants did not take certain steps to lower or shut off EtO emissions. This allegation of inaction or omission is insufficient to state a claim for battery under Louisiana law. *Ellis*, 2021 WL 4862146, at *8 (plaintiffs failed to state a claim for battery where they alleged individual employees failed to take action to lower or shut off EtO omissions) (citing *Hoyte v. Stauffer Chem. Co.*, No. 98-3024, 2002 WL 31892830, at *52 (Fla. Cir. Ct. 2002) (citing *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)) ("Battery requires an intentional affirmative act by the defendant and cannot be predicated upon an omission or failure to act."); *Hunter v. Shenango Furnace Co.*, 527 N.E.2d 871, 873-74 (Ohio 1988) (rejecting a battery claim because the "actual nature of the action [did] not claim an overt, positive or affirmative act on the part of the defendant"); *D.D.Z. & D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 4 (Utah Ct. App. 1994) (rejecting a battery claim where a company manager who allegedly

16

witnessed the act failed to intervene); *Faust v. Greater Lakeside Corp.*, 797 So. 2d 748, 753-54 (La. App. 4 Cir. 2001) (finding that, while an employer may have been "negligent or even grossly negligent" for failing to conduct background checks, implement security measures, and act on threats of a store robbery, its inaction did not "constitute[ ] an intentional tort"); *Evans v. Int'l Paper Co.*, No. 10-1916, 2011 WL 1898912, at *6 (W.D. La. Mar. 24, 2011) ("Mere knowledge and appreciation of risk does not constitute intent, nor does reckless or wanton conduct or gross negligence." (citing *Landry v. Uniroyal Chem. Co.*, 653 So. 2d 1199, 1203 (La. App. 1 Cir. 1995))). For this reason alone, Plaintiffs' battery claims against the Individual Defendants are without merit.

In addition, Plaintiffs do not plead any facts in support of their conclusory allegations of the elements of battery. Plaintiffs raise conclusory, unsupported factual allegations with respect to what the Individual Defendants knew with substantial certainty regarding EtO as a likely carcinogen, whether the Plaintiffs would contact and inhale harmful levels of EtO, and whether that inhalation would cause serious health risks and increased risks of cancer. These allegations are "naked assertions devoid of further factual enhancement" required to state a plausible claim of battery. *See Ellis*, 2021 WL 4862146, at *8 (quoting *Iqbal*, 556 U.S. at 678 (cleaned up) (citations omitted)). Even accepting that any of the Individual Defendants knew of the possible danger of EtO, that knowledge of a possible danger would not give rise to a battery claim. *Id*. (citing *Evans*, 2011 WL 1898912, at *6 ("Mere knowledge and appreciation of risk does not constitute intent…" (citing *Landry*, 653 So. 2d at 1203)); *cf. Armstead v. Schwegmann Giant Super Markets, Inc.*, 618 So. 2d 1140, 1142 (La. App. 4 Cir. 1993), writ denied, 629 So. 2d 347 (La. 1993) ("[M]ere knowledge . . . that a machine is dangerous and that its use, therefore, creates a high probability that someone will eventually be injured is not sufficient to meet the 'substantial certainty' requirement." (citations omitted)).

As with other courts, this Court rejects Plaintiff's battery claims arising from alleged exposure to hazardous conditions based on the conclusory allegations in the Petition. *See Ellis,* 2021 WL 4862146, at *8 (citing *Butler v. Denka Performance Elastomer LLC*, No. 18-6685, 2019 WL 1160814, at *9 (E.D. La. Mar. 13, 2019) (dismissing an emissions-based battery claim because "plaintiffs do not allege facts that indicate that [defendant] knew that harm was substantially certain or . . . consciously desired to harm them by continuing to manufacture chloroprene and allowing [excessive] emissions"); *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico*, on April 20, 2010, MDL No. 2179, 2011 WL 4575696, at *11 (E.D. La. Sept. 30, 2011) (dismissing a battery claim arising out of the spraying of harmful chemicals in plaintiffs' vicinity because the complaint did not "state or suggest that the [defendant] 'desired' that his spraying would cause an offensive or harmful touch to the [plaintiffs]"); *Evans*, 2011 WL 1898912, at *6 (rejecting a battery claim for hazardous noise levels allegedly causing hearing loss as "conclusory" and otherwise insufficient to state a claim for an intentional tort)). The Court finds that there is no possibility of recovery for Plaintiffs' claims of civil battery with respect to the Individual Defendants.

### E.   Diversity Jurisdiction is Proper

Plaintiffs' allegations of negligence and civil battery against the Individual Defendants are deficient. The Court finds that there is "no reasonable basis . . . to predict that the plaintiff[s] might be able to recover against [the] in-state defendant[s]." *Davidson*, 819 F.3d at 765 (quoting *Smallwood*, 385 F.3d at 573). Accordingly, joinder of the non-diverse Individual Defendants was improper, complete diversity exists, and the Court has jurisdiction under 28 U.S.C. § 1332.

### IV.   Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion for Remand (R. Doc. 19) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiffs' claims against the non-diverse Individual Defendants, Michael Albano, Dan Bucholtz, Kim Feltner, Sandy Holden, Dan Jason, Donald Lyle, Lance Parker, Robert Samson, Jennifer Smith, Theo Webre, Karen Williams, Eric Robertson, Larry Locicero, and Roland Lambotte, be **DISMISSED WITHOUT PREJUDICE.**

Signed in Baton Rouge, Louisiana, on March 11, 2022.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**